No. 22-1936

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT
_____

ABRAR OMEISH,

*Plaintiff-Appellant,*

v.

STACEY KINCAID,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia

**OPENING BRIEF OF PLAINTIFF-APPELLANT
ABRAR OMEISH**

November 16, 2022

Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Plaintiff-Appellant*

***Gadeir I. Abbas licensed to practice
in Virginia only. Practice limited
to federal matters.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION .................................................... 1

STATEMENT OF ISSUES ................................................................. 2

INTRODUCTION ............................................................................. 3

STATEMENT OF FACTS AND THE CASE ....................................... 4

   I.  Kincaid's agents remove Omeish's hijab and photograph her. ......... 4

   II.  Omeish brings a lawsuit based on her arrest and photographs. ..... 7

   III.  Omeish prevails on her claim against Kincaid and obtains an injunction requiring destruction of all uncovered photographs. ......... 12

   IV.  The District Court denies fees as a matter of discretion. ............ 13

SUMMARY OF ARGUMENT ........................................................... 15

STANDARD OF REVIEW ................................................................ 16

ARGUMENT ................................................................................. 16

   I.  No special circumstances exist in this case that would render an award unjust. ........................................................................ 16

     A.  Omeish's lack of complete success is not a special circumstance. 18

     B.  The closeness of the case and the professionalism of the parties are not special circumstances. ........................................................ 29

   II.  The District Court's failure to apply the right test was an abuse of discretion. ...................................................................... 31

CONCLUSION ........................................................................ 33

CERTIFICATE OF COMPLIANCE ...................................... 35

# TABLE OF AUTHORITIES

## Cases

*Bills v. Hodges*, 628 F.2d 844 (4th Cir. 1980) .................................... 20, 33

*Brandon v. Guilford Board of Elections*, 921 F.3d 194 (4th Cir 2019) .. 19

*Carter v. Burch*, 34 F.3d 257 (4th Cir. 1994) ........................................... 22

*Cherry v. Champion International Corp.*, 186 F.3d 442 (4th Cir. 1999) 34

*Cleveland v. Ibrahim*, 121 F. App'x 88 (6th Cir. 2005) .................... 32, 34

*Condon v. Wilson*, 14-cv-4010, 2015 WL 12862712 (D.S.C. Aug. 10,
   2015) ...................................................................................................... 32

*Constantino v. American S/T Achilles*, 580 F.2d 121 (4th Cir.1978) .... 35

*Consumers Union, Inc. v. Va. State Bar*, 688 F.2d 218 (4th Cir. 1982) 19,
   20

*Doe v. Baltimore Board of Education*, 165 F.3d 260 (4th Cir. 1998) ...... 19

*Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92
   (4th Cir. 1993) ...................................................................................... 30

*Farrar v. Hobby,* 506 U.S. 103 (1992) ...................................................... 21

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................... passim

*Holt v. Hobbes,* 574 U.S. 352 (2015) ........................................................ 28

*Lefemine v. Wideman* (*Lefemine I*), 568 U.S. 1 (2012) ...................... 24, 33

*Lefemine v. Wideman* (*Lefemine II*), 758 F.3d 551 (4th Cir. 2014) . passim

*McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir. 1998) .... 19,
   34

*Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005) ................... 22, 23, 24

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................ 29

*Mosley v. Town of Pennington Gap*, 995 F.2d 1063 (4th Cir. 1993) ....... 22

*N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980) ............................ 19

*Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980) .. 32

*Texas State Teachers Ass'n v. Garland ISD*, 489 U.S. 782 (1989) .......... 21

## Statutes

28 U.S.C. § 1291 ........................................................................................ 4

28 U.S.C. § 1331 ........................................................................................ 4

42 U.S.C. § 1983 ........................................................................................ 4

42 U.S.C. § 1988 ........................................................................................ 4

42 U.S.C. § 2000cc ..................................................................................... 4

**Other Authorities**

E.D. Va. Local Rule 37(E) ........................................................ 27

Virginia Code § 2.2-3706(A) ................................................... 23

## STATEMENT OF JURISDICTION

Jurisdiction is proper in this case under 28 U.S.C. § 1331, as this appeal arises from a judgment dismissing a civil action in the United States District Court for the Eastern District of Virginia. The underlying civil action alleges violations of federal law, specifically the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, and the First Amendment of the United States. *See* 42 U.S.C. § 1983. The District Court had jurisdiction over Omeish's claims for fee under 42 U.S.C. § 1988. This Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court entered a final judgment denying Omeish's request for fees on August 25, 2022. JA 255. Omeish timely filed a notice of appeal on September 2, 2022. JA 257.

## STATEMENT OF ISSUES

A prevailing Section 1988 plaintiff is entitled to fees unless special circumstances render an award of fees unjust. The issues in this appeal are:

1.    Are the lack of complete success, the closeness of the case, or the fact that both parties professionally briefed the legal issues special circumstances?

2.    Does the District Court abuse its discretion when it applies a Rule 54(d)(1) abuse of discretion test, instead of the special circumstances test, for determining whether a prevailing Section 1988 plaintiff is entitled to fees?

## INTRODUCTION

When Sheriff Kincaid's officers forcibly removed Abrar Omeish's hijab and took photographs of her without it in violation of her sincere religious beliefs, Omeish sued. And won. The District Court granted summary judgment to Omeish against Kincaid. Thanks to the resulting permanent injunction, Kincaid ensured that all copies of the photographs the Sheriff's office took that day were destroyed. The Court's opinion made clear to Kincaid and the general public that Kincaid's lack of a religious accommodation violated the law.

This makes Omeish a prevailing party. So Omeish is entitled to attorneys' fees unless there are special circumstances that would make an award of attorneys' fees unjust. No such circumstances exist.

The District Court gave a number of very ordinary circumstances as grounds for awarding fees: Omeish only prevailed on some of her claims, not all of them; Omeish only partially succeeded in a discovery dispute below; the legal issues were close, and that both sides acted professionally. The District Court—acting before briefing on the issue was completed—did not claim these were special circumstances. Instead, the

District Court used the wrong test, believing that, like an award of costs, granting or denying fees was in the District Court's broad discretion.

That was error. Because there are no special circumstances in this case, and because the District Court used the wrong standard in any event, the Court should reverse the denial of fees.

## STATEMENT OF FACTS AND THE CASE

### I.  Kincaid's agents remove Omeish's hijab and photograph her.

Abrar Omeish is a Muslim-American, a local political activist, and an elected Fairfax County School Board member. JA 169; JA 219. She wears hijab, a religious headscarf, to cover her hair and neck. JA 170; JA 219. She began wearing hijab in second grade and had not–until the events that gave rise to this case–publicly removed it since. JA 180 at 9-10.

The religious purpose of hijab is an expression of modesty. JA 170; JA 220. Omeish's faith commands her to wear hijab in all mixed-gendered spaces outside her immediate family. *Id.* Her hijab is a pillar of her religious practice and integral to her practice of Islam. *Id.* Appearing in public or being photographed without wearing hijab, and having that photo available to the public, is a serious breach of her faith and a deeply

humiliating and defiling experience in conflict with her sincerely held religious beliefs. *Id.* "[T]his is not like taking off a jacket …. for me, this is like taking off your underwear or something." JA 210 at 9-22.

On March 5, 2019, Officer Patrick arrested Omeish during a traffic stop. JA 171; JA 220; JA 224. She had made a right on red and did not come to a complete stop, and then did not produce her license quickly enough for Patrick's liking. *Id.* During the arrest, Patrick pepper sprayed Omeish in the face at point-blank range, then slammed her head into her car door frame hard enough to give her a concussion. JA 224, JA 177 at 9-11. After her arrest, Patrick took her in handcuffs to the Fairfax County Adult Detention Center. JA 171; JA 220; JA 224.

At the Fairfax County Adult Detention Center, which Kincaid runs, Kincaid's employees and Officer Patrick took Omeish through the booking process. JA 220; JA 171. Omeish explained to them that, according to her sincerely held religious beliefs, she could not be photographed or appear publicly without her hijab. JA 171; JA 221. The sheriff's staff found a female deputy to take Omeish's fingerprints and booking photos, but refused to bar male deputies from the room, allowing them to view her at

all times. JA 178 at 1-9; JA 186-87; JA 206 at 2-21; JA 179 at 9-22; JA 207 at 3-12; JA 209 at 3, JA 214 at 11.

When Kincaid's agents took her to the photography area, they ordered Omeish (despite her repeated protestations) to take off her hijab in front of the men. JA 172; JA 221 at 4; JA 181 at 13-JA 182 at 16. The female deputy eventually walked over and completely removed the hijab from Omeish's head. *Id.* The deputy then took at least three photos of Omeish uncovered before having Omeish loosely drape the scarf back over her head to take one more photo. *Id.* Later, This process is established by Kincaid's Standard Operating Procedure 533, which requires deputies at the Fairfax County Adult Detention Center to remove any religious head covering before taking the booking photo. JA 189 at 20-JA 190 at 7; JA 216. These photos were then preserved in the databases of not only the Sheriff's office but the Fairfax County Police Department, the Virginia State Police, and the FBI, accessible by both men and women. *See* § III, below.

Omeish was ultimately confined at the Adult Detention Center for less than two hours. JA 183-84. The Government abandoned its

Obstruction of Justice charge (the only charge other than two minor traffic violations), and that charge was later expunged. JA 258-59.

## II.    Omeish brings a lawsuit based on her arrest and photographs.

Omeish sued Kincaid in her official capacity, Officer Patrick in his individual capacity, and Patrick's supervisor, Chief Rohrer of the Fairfax County Police Department, in his official capacity. Dkt. 1. The claims against Kincaid and Rohrer, under the First Amendment and RLUIPA, arose out of the removal of Omeish's hijab and the uncovered photographs of Omeish. Omeish sought the destruction of her hijabless photos, a policy change preventing Muslims in the future from being treated similarly, damages, and attorneys' fees. JA 022-25, 027-28. Omeish also brought a damages claim against Patrick, both for excessive force and for his participation in the hijab removal and photography. JA 024-27.

Kincaid and Rohrer moved to dismiss. JA 032. Kincaid argued that she had sovereign immunity as to both monetary and injunctive relief, that Omeish had no standing to seek a policy change, that Omeish had not established sufficient harm necessary for injunctive relief. JA 035-41. Kincaid also argued that Omeish did not state a claim under RLUIPA or the First Amendment. JA 041-47. Rohrer argued that Omeish had not

7

alleged that he had a sufficient connection to the policy to be liable under *Monell*. Dkt. 33 at 4-10. Omeish opposed dismissal. In doing so, she argued that her claim against Kincaid was redressable because Kincaid and others still had access to the challenged photographs. JA 060-62. "And among other appropriate relief the Court could grant, Omeish is at the minimum seeking prospective relief against both Defendants in the form of destruction of the unlawfully-obtained photograph[s]." *Id.* The combined opposition spent less than two pages responding to Chief Rohrer's *Monell* argument. JA 058-60.

The District Court dismissed Rohrer from the appeal, finding that he and his officers lacked sufficient connection to SOP 533, the photographing policy that Omeish challenged. JA 092-93. The District Court also dismissed the damages claim against Kincaid, holding that Virginia sheriffs are immune from damages in their official capacity, regardless of whether the damages related to conduct funded by the state or funded locally. JA 086-89.[1] And—based on Kincaid's defense against mootness

---

[1] The salaries for sheriffs and their deputies are funded by the state, leading *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013), to have held previously that sheriffs have Eleventh Amendment immunity for employment-related claims. The Adult Detention Center operations are funded by the County.

based only on the destruction of the photographs—the District Court foreclosed any injunctive relief against the policy. JA 090. But the District Court made clear that Omeish stated a claim against Kincaid and could get injunctive relief related to destruction of the photographs Kincaid's deputy took without her hijab on. JA 091.

The case proceeded to discovery. Omeish filed a single pair of written discovery requests: one set of interrogatories and one set of requests for production. Dkt. 61-1, Dkt. 61-2. Rather than responding to discovery in the typical manner—producing some things and declining to produce others, and resolving the rest on a meet and confer—Kincaid filed a Motion for a Protective Order. Kincaid refused to produce anything, including, for instance, documents identified by Kincaid in Kincaid's initial disclosures. Dkt. 61. Kincaid likewise performed no meaningful meet and confer on the discovery dispute itself, instead performing cursory meet and confers with two of Omeish's lawyers as to the Motion for a Protective Order. JA 136-37, 157; *see also* Dkt. 61 (no certificate of conference).

The Motion for a Protective Order argued that because the remedy for Kincaid's RLUIPA violation had been limited to the destruction of the challenged photographs, most of Omeish's requested discovery was

irrelevant. Specifically, the Motion characterized as irrelevant any discovery as to SOP 533, whether the Government had any compelling interest for taking photographs of Omeish without her hijab on, and whether there were any less restrictive means for accomplishing those compelling interests. Dkt. 61 at 3.

At the hearing on the Protective Order, counsel for Omeish noted that no sufficient, meaningful meet and confer occurred, and that Omeish would be willing to narrow some of her requests as part of a meet and confer. JA 104, 125. The Magistrate Judge ordered a more thorough meet and confer as a result. JA 125-26.

The meet and confer was mostly successful (and the Magistrate Judges commended the parties as such), and afterwards only 1 request and 5 interrogatories remained in dispute. JA 131, 148. A second hearing was held. At that hearing, the Magistrate Judge expressly rejected the single argument that Kincaid had made in her Motion for a Protective Order. JA 141-46. As the Magistrate Judge explained, "in order to get to the relief, you have to prove that an injunction is appropriate…. There are elements to the claim of getting an injunction…. One of them is success on the merits." JA 142. As to the remaining six discovery requests,

Omeish agreed that the remaining document request was duplicative of one of the interrogatories, and the Magistrate Judge required Kincaid to respond to that interrogatory. JA 140, 151-54; *see* JA 119-20 ("I believe the request as narrowed is reasonably calculated to lead to the discovery of admissible evidence, so any further discourse or discussion concerning the narrowed request has come to an end.") The remaining four interrogatories were, according to the Magistrate Judge, out of bounds: the requests either asked what the interests Kincaid was asserting for taking Omeish's photographs without hijab on,[2] which was (according to the Magistrate Judge) impermissibly asking Kincaid to answer a legal question, or asked whether those potential reasons were compelling or could be accomplished by less restrictive means, which the Magistrate Judge deemed speculative until Kincaid provided their asserted interests. JA 158-59, 163-66.

Ultimately, Omeish got the information she was seeking from the Rule 30(b)(6) deposition. JA 169-75; *see generally* JA 188; JA 166 (suggesting Omeish could get the information at a deposition). Kincaid,

---

[2] This includes any interest shown by modifications or potential modifications to the policy at issue, *see* JA 126-27.

meanwhile, appealed the Magistrate Judge's ruling to the District Court.

Dkt. 73. The District Court never ruled on the objection.

## III. Omeish prevails on her claim against Kincaid and obtains an injunction requiring destruction of all uncovered photographs.

After discovery, Omeish moved for summary judgment against Kincaid. JA 168. Kincaid's Opposition did not defend the taking of the photographs as lawful, but instead asserted that in response to the motion for summary judgment Kincaid had destroyed some of (but not all) copies Kincaid had in its possession of the photographs, and that the case was moot. JA 220-21 at 10 & 12. The District Court rejected Kincaid's mootness argument and granted summary judgment on the merits to Omeish. JA 232-38.[3] The Court then issued an injunction requiring Kincaid to (1) destroy all copies of the challenged photographs, and (2) ask third parties that she was aware had copies, including but not limited to the Virginia

---

[3] Patrick also sought summary judgment. Dkts. 85-86. In response to that summary judgment motion, Omeish declined to challenge summary judgment as it related to the photographs in question, as that had been essentially precluded by the District Court's Motion to Dismiss ruling. Dkt. 101; *see also* Dkt. 113 at 8-10. The Court granted Patrick summary judgment on the excessive force claim, and Omeish is currently appealing that grant of summary judgment. Dkt. 113 at 8; Dkt. 131.

State Police and Rohrer's Fairfax County Police Department, to destroy their copies. JA 240.

Kincaid filed a notice of appeal. JA 242. In the meantime, she agreed to destroy her own copies but belatedly moved for a stay as to the obligations to ask third parties to destroy their documents. Dkt. 119 & 22-1826 at Dkt. 11. The District Court and the Court of Appeals each denied the stay. Dkt. 132; 22-1826 at Dkt. 22. Ultimately, at a show cause hearing about Kincaid's timely compliance with the injunction, counsel for Kincaid announced that the final party with a copy of an uncovered photograph (the FBI, it turned out), had in fact destroyed the photograph. and counsel for Omeish declared that this resolved the entire matter, and the Court entered an order so stating. JA 260. Omeish then filed a Suggestion of Mootness in the Court of Appeals. 22-1826 at Dkt. 27. Kincaid opposed the dismissal of that appeal. 22-1826 at Dkt. 29. A decision on mootness, and the appeal itself, both remain pending.

## IV. The District Court denies fees as a matter of discretion.

Meanwhile, Omeish filed a motion for fees as a prevailing party under Section 1988. Dkt. 127. Kincaid filed a Motion to stay or extend her response. Dkt. 136. In that Motion, Kincaid claimed that "it was

discretionary for the Court to grant attorney's fees to a prevailing party." Dkt. 136 at 2 (cleaned up). Before Omeish had a chance to respond— counsel was planning on not opposing the Motion but noting the standard was incorrect—the District Court issued an Order denying fees. JA 255.

The District Court's denial relied on Kincaid's proffered abuse of discretion standard and the Fourth Circuit's decision in *Cherry v. Champion International Corp.*, 186 F.3d 442, 446 (4th Cir. 1999), a case about the discretion to award costs under Federal Rule of Civil Procedure 54(d)(1). Dkt. 140 at 1. While the Court found that Omeish's Permanent Injunction was "valuable" relief to Omeish personally, the Court held that Omeish did not succeed on all of her claims. JA 256. The District Court expressly noted her claims against Rohrer, her claims for damages, and her attempt to obtain a policy change. *Id.* The District Court further noted that Omeish's "repeated" discovery requests were overbroad, that the issues in the case were close, and that both parties briefed the case well and argued it professionally. *Id.* As a result, the District Court found a fee award was unwarranted. *Id.*

Omeish now appeals that denial of fees.[4]

## SUMMARY OF ARGUMENT

Under the prior precedents of this Court and the Supreme Court, a prevailing Section 1988 plaintiff is entitled to fees unless special circumstances render an award of fees unjust. No such circumstances exist here.

The Court's denial of fees pointed to a variety of ways in which Omeish's lawsuit only partially succeeded Her claims against Chief Rohrer and her claims against Kincaid for damages were both dismissed prior to discovery. The District Court's injunction formally benefitted only herself and provided no policy change for others. And a discovery dispute below only partially succeeded, with Omeish obtaining some sought discovery and not others. But, under Supreme Court precedent, these are all ordinary circumstances. And as ordinary circumstances, the District Court's discretion is limited to reducing, not denying, fees for the lack of complete success.

---

[4] Omeish's Motion for a Bill of Costs remains pending. Dkt. 118. Presumably, the Court's decision to deny fees including the fees sought in the Bill of Costs. Because the decision to deny costs are discretionary, Omeish does not expressly seek review of that decision to the extent the Court has made it. But it reserves the right to seek a specific determinations regarding the Bill of Costs on remand.

The District Court also pointed to the closeness of the case and both parties' professional briefing as grounds for denying fees. These, too, are ordinary circumstances, and do not warrant even a reduction, much less a denial of fees.

The reason for the District Court's error was that it was not looking for special circumstances. The District Court believed it had the authority to deny fees based on its discretion without regards to any special circumstances. The failure to use the right test in denying fees, alone, is grounds for reversal.

## STANDARD OF REVIEW

Ordinarily, a district Court's decision to grant or deny fees is reviewed for abuse of discretion. *Lefemine v. Wideman* (*Lefemine II*), 758 F.3d 551, 554 (4th Cir. 2014). But when the District Court applies the wrong test, that itself constitutes an abuse of discretion. *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir. 1998).

## ARGUMENT

## I. No special circumstances exist in this case that would render an award unjust.

Under Section 1988, "a prevailing party should "***ordinarily*** recover an attorney's fee ***unless special circumstances*** would render such an

16

award unjust." *Brandon v. Guilford Board of Elections*, 921 F.3d 194, 198 (4th Cir 2019) (emphasis original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). As a result, a "court's discretion to deny a fee award to a prevailing plaintiff is narrow." *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980); *see also Doe v. Baltimore Board of Education*, 165 F.3d 260, 264 (4th Cir. 1998) (noting that "[o]nly on rare occasions does a case present [special] circumstances" warranting a denial of fees to a prevailing party (emphasis added)); *Consumers Union, Inc. v. Va. State Bar*, 688 F.2d 218, 222 (4th Cir. 1982) (noting that the "special circumstances" exception is "narrowly limited"). This Court has "not hesitated to reverse district courts that have found 'special circumstances' where none existed. *Brandon*, 921 F.3d at 198 (citing *Lefemine II*, 758 F.3d at 556–59) (concluding that no "special circumstances" existed and reversing a denial of a § 1988 fee motion on that ground); *Consumers Union*, 688 F.2d at 221–22 (same); *Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980) (same, holding that neither a "plaintiff['s] ability to pay attorneys' fees" nor "a defendant's good faith" qualify as "a special circumstance that would render an award of fees unjust")).

The District Court provided a handful of discrete reasons for its denial of fees. JA 256. It explained that Omeish's case failed in certain respects, noting the Court's dismissal at the Motion to Dismiss stage of Chief Rohrer as a defendant and Omeish's damages claim under RLUIPA, as well as the Court's narrowing of the injunctive relief Omeish could seek to a destruction of the photographs. *Id.* It further listed as a ground for denying fees the fact that Kincaid filed a protective order against the written discovery Omeish sought in the case, which was ultimately granted in part. *Id.*; *see also* Fact § II, above. It also relied on the closeness of the issues as well as the well-written briefs both parties filed in the case as a reason why awarding fees against Kincaid would be unjust. *Id.*

None of these are special circumstances.

## A.   Omeish's lack of complete success is not a special circumstance.

### 1.   Omeish obtained "valuable" relief sufficient to obtain fees.

The "'most critical factor' in determining the reasonableness of a fee award is 'the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). But the "'degree of the

plaintiff's success' does not affect 'eligibility for a fee award.'" *Farrar, id.*
(quoting *Texas State Teachers Ass'n v. Garland ISD*, 489 U.S. 782, 790
(1989)). Instead, a plaintiff is normally entitled to fees "if they succeed on
***any*** significant issue in litigation which achieves ***some*** of the benefit the
parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (emphasis orig-
inal). The degree of success is simply part of the lodestar analysis (which
the District Court here did not reach). *Id.* Only when the relief a plaintiff
gets is limited to nominal damages does the degree of success become
even potentially so small to justify an award of no damages or to dispense
with the lodestar analysis. *Farrar*, 506, U.S. at 115.

Even then, nominal damages are often enough to qualify for an
award of fees in this Circuit. Only when nominal damages are the result
of the plaintiff's failure "to prove an essential element of the claim," *Mos-
ley v. Town of Pennington Gap*, 995 F.2d 1063 (4th Cir. 1993) (Table) (un-
published opinion), or when a case involves "no broad civil rights issues,"
*Carter v. Burch*, 34 F.3d 257, 266 (4th Cir. 1994) is it appropriate to deny
fees to an individual who obtains only a nominal damages award. *See
generally Mercer v. Duke Univ.*, 401 F.3d 199, 210 (4th Cir. 2005).

The District Court in this case accepted that the injunction Omeish obtained, which ultimately led to the destruction of all copies of her hijabless photographs (including copies in the hands of the Virginia State Police, the Fairfax County Police, and the FBI), was "valuable to herself." JA 256. And, to be clear, it was "valuable to herself" in the sense that destruction of the illegally taken was the photograph central goal of this case, and Ms. Omeish accomplished that goal.

That is enough to mandate fees. This was "some … benefit" under *Hensley*. 461 U.S. at 433. Indeed, in a case where Omeish only was unable to obtain a policy change because she had no continuing legal interest in it, and where no amount of damages could have prevented the uncovered photo's future dissemination, the destruction of the photographs was the primary benefit Omeish sought. If it were not, Omeish would have dropped the case after the motion to dismiss stage. But instead, Omeish—a devout Muslim, recent law school graduate, and local elected official with a number of political adversaries—persevered, and ultimately prevented her uncovered booking photos from ever being published to the public. This was no mere speculative risk, as Omeish has

20

political enemies,[5] and booking photos must be provided under state FOIA law as a matter of course. Virginia Code § 2.2-3706(A).

Further, while the relief obtained only benefitted herself, the Court's conclusion that Kincaid violated RLUIPA will inure to the benefit of other Muslim women arrested in Fairfax County and, indeed, throughout Virginia, who may use Omeish's victory to help vindicate their own rights.[6] This Court has held that even nominal damages providing no injunctive relief at all is sufficient to entitle a Section 1988 plaintiff to fees when the plaintiff's "victory is not de minimis or purely technical." *Mercer*, 401 F.3d at 208-209. The Court's granting of damages even for mere nominal damages recognized that "a case involving the claim of a single individual, without any request for wide-ranging declaratory or injunctive relief, can have a profound influence on the development of the law and on society." *Id.* at 208. This was the case here.

---

[5] *See, e.g.,* https://fairfaxgop.org/video-school-board-members-2019-arrest/ [last visited November 1, 2022].

[6] Kincaid's primary argument for why the hijab removal policy was necessary was that Virginia's state booking process system requires a photograph without any head covering in order for sheriffs to submit booking photos to the state electronically. *See. e.g.,* Dkt. 91-3 at 29, 47, 52, 54. Otherwise, physical copies of the photographs must be mailed to the Virginia State Police. *See* Dkt. 91-3 at 57, 95. As a result, other government agencies have similar hijab removal policies elsewhere in Virginia.

### 2. The lack of a damages award is not a special circumstance.

A plaintiff prevails when she obtains injunctive relief, even when her claim for damages fails. *Lefemine v. Wideman* (*Lefemine I*), 568 U.S. 1, 4 (2012). She is thus entitled to fees unless special circumstances exist. *Id.* at 5. The facts in *Lefemine* itself—the Supreme Court vacated the Fourth Circuit's decision to deny fees when Lefemine won an injunction but not an award of damages—make clear that the failure to obtain damages does not qualify as a special circumstance. And on remand, the Fourth Circuit held that Lefemine's specific failure to obtain damages was not a special circumstance because it was "for reasons related not to the merits of his case" but instead of because of "governmental immunities and defenses." *Lefemine II*, 758 F.3d at 559. So too here. The failure to obtain damages against Kincaid, because the District Court held that Virginia sheriffs are state officers does not constitute a special circumstance. JA 086-89; *see* above at Facts § II and n.1. Indeed, Omeish's victory was sufficient that Omeish did not bother to appeal the lack of damages.

22

### 3. Omeish's lack of success against Roher and Patrick is not a special circumstance.

It is true that Omeish's claims against Chief Rohrer (for participating in Kincaid's hijab removal policy) and Officer Patrick (for unrelated excessive force, *see* 22-1878) both failed.[7] But the existence of successful claims along with unsuccessful claims is not a special circumstance. Indeed, per *Hensley*, it is a very ordinary and typical circumstance. 461 U.S. at 434-37. And *Hensley* specifically explains what a court should do when a case contains both successful and unsuccessful claims: The court should not permit fees for time spent on unsuccessful claims that are unrelated to any successful claims. *Id.* at 434-35. Otherwise, when "a plaintiff has achieved only partial or limited success," the proper thing for a District Court to do is to reduce claims appropriately as part of the lodestar analysis, by, e.g., attempting to "identify specific hours that should be eliminated" or by lowering the lodestar multiplier "to account for the limited success." *Id.* at 436-37. It is not to deny fees outright.

---

[7] Plaintiff maintained a constitutional claim for damages related to Patrick's participation in the hijab removal but voluntarily abandoned it at summary judgment. Omeish's appeal of the excessive force decision remains pending.

Appropriately, the District Court did not claim the lack of success against Patrick was a special circumstance. In accordance with *Hensley*, Omeish's fee request already excluded all time spent solely related to claims against Patrick. Indeed, Omeish did not seek time for any of Patrick's deposition, even though a part of that deposition was used in Omeish's summary judgment motion against Kincaid. JA 169-71.

As to Chief Rohrer, the time spent litigating the case against Rohrer was intertwined through the motion to dismiss briefing. While Rohrer and Kincaid both filed a motion to dismiss, Omeish responded to them in a joint opposition. JA 050. The portion of the Motion to Dismiss Opposition spent against Chief Rohrer was but a small part of the Opposition— less than two pages. JA 058-60. Yet even if the claims were not sufficiently intertwined, *Hensley* provides the remedy: denial of the time spent on the claims against Rohrer, or reduction of the time spent on both claims, to the extent the court finds such a reduction appropriate.

Here, the Rohrer claim was dismissed at the very beginning of the litigation. So, at most, the failure of the Rohrer claim would have entitled Kincaid to a reduction in hours spent on the Complaint and the Motion

to Dismiss in performing the *Hensley* lodestar test. That failure does not support a special circumstance for denying fees outright.

### 4. Omeish's lack of success opposing a discovery protective order is not a special circumstance.

In denying fees, the District Court concluded that Omeish "repeatedly moved for documents that were well beyond the scope of evidence that would be relevant for her claim to an injunction." JA 256. Not so. Omeish filed only a single set of Interrogatories and Requests for Production to Kincaid. Dkt. 61-1, Dkt. 61-2. Rather than partially produce, or adequately meet and confer about the requests, Kincaid refused to produce outright and filed a motion for a protective order. JA 136-37 and 157-58; Dkt. 61, 61-1, Dkt. 61-2. At the first hearing regarding the protective order, the Magistrate Judge required the parties to properly meet and confer, as required in the Eastern District of Virginia. *Id.*; *see also* E.D. Va. Local Rule 37(E). The meet and confer settled the discovery dispute over all but 6 of the requests. JA 131, 148.

During a second hearing over those six requests, counsel for Omeish agreed that one was duplicative, JA 140, 153-54, and the Magistrate Judge granted the protective order as to four of the requests, JA 163-66. This was not because those requests "were well beyond the scope

25

of evidence that would be relevant for her claim to an injunction," as claimed by the District Court, but because those requests went to whether or not Kincaid's policy of taking photographs with hijab off were the least restrictive means of enforcing a compelling government interest. JA 158-59, 163-66. This element of the RLUIPA test was a prerequisite for Omeish obtaining any injunction at all. *Holt v. Hobbes,* 574 U.S. 352, 357-58 (2015). The Magistrate Judge did not grant the protective order because, as Kincaid argued in her motion, the discovery requests were irrelevant. Dkt. 61 at 3; JA 141-46. Instead, the Court explained that as to four of the remaining requests in dispute, some of them sought out what compelling government interest Kincaid was asserting, which (according to the Court) improperly sought legal conclusions rather than facts, and others related to whether the potential compelling interests were sufficiently compelling or narrowly tailored, which the Court held was speculative until Kincaid divulged what her compelling interests were. JA 163-66.

And the Magistrate Judge denied the Protective Order as to a fifth remaining request (and Omeish agreed to relinquish the final disputed

26

request as duplicative of that request). JA 098.[8] Afterwards, Omeish received the information she previously failed to obtain from written discover from Kincaid's 30(b)(6) deposition, which Omeish then used in her Motion for Summary Judgment. *See* JA 169-70; *see generally* JA 185.

Overall, Omeish's discovery conduct was reasonable. Indeed, in denying fees, despite District Court expressly held that Omeish did not act in bad faith in any way and committed no misconduct. JA 256. And while Omeish's discovery was only partially successful, it was Kincaid's actions in prematurely filing a protective order that caused the additional litigation efforts that may have been disproportionate to the case.

But even if the District Court's assertion of Omeish's discovery requests were correct, that would simply be grounds for reducing her fees related to those discovery requests. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (district court may reduce fees for over-litigation, but only as appropriate and with deference "to the winning lawyer's professional judgment as to how much time he was required to spend on the case"). It would not be grounds for denying fees outright.

---

[8] Kincaid appealed that denial, and no decision was made by the time summary judgment was granted. Omeish did not appeal any part of the Magistrate Judge's ruling.

Instead, overlitigation may only be grounds for denying a prevailing Section 1988 plaintiff fees outright "when the amount requested is so excessive it shocks the conscience of the court." *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993).

*       *       *

The District Court effectively concluded that, in order to be considered a prevailing party entitled fees under Section 1988, a plaintiff has to obtain all the relief she seeks. That conclusion is foreclosed by prior precedents of this Court and the Supreme Court for good reason. If that were the case, plaintiffs' counsel in civil rights cases would have to carefully and strategically decide exactly how much relief to seek, because losing any part of the case could render a plaintiff non-prevailing. Even if—like here—only part of the case got dismissed at the Motion to Dismiss stage, a plaintiff like Omeish would be unable to obtain fees even if—again, like here, as against Kincaid—she won on every claim that made it past the motion to dismiss. Such gamesmanship would discourage, not encourage, legitimate civil rights litigation in response to civil rights violations. Such a rule would result in a windfall to defendants like Kincaid who are ultimately found to have violated a plaintiff's rights, as their

small victory at the motion to dismiss stage would gain them complete relief at the fee stage. Thankfully, this Court's and the Supreme Court's prior precedents have already foreclosed such a result.

### B. The closeness of the case and the professionalism of the parties are not special circumstances.

Other than pointing to Omeish's lack of complete success in various aspects, the District Court's only other reasons for not granting Omeish fees were the closeness of the case and the professional job done by the parties. JA 256. The latter point, to be clear, was meant to be a compliment—the District Court denied fees because of how good a job both Omeish's counsel and Kincaid's counsel did in presenting their cases. But this compliment being a ground for denying fees exposes the broader flaw of the District Court's decision. The District Court saw a fee award as a punishment, akin to Rule 11 sanctions, that the Court should only issue in response to the government's counsel acting particularly objectionably.

This is not the law. Instead, "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting legislative history). "A fee award under § 1988 is not a sanction or punishment against a defendant, and a defendant's good faith defense of an unconstitutional state law does

29

not disqualify a plaintiff from an award of attorney's fees." *Condon v. Wilson*, 14-cv-4010, 2015 WL 12862712, at *1 (D.S.C. Aug. 10, 2015) (quoting *Lefemine II*, 758 F.3d at 555-56). "[F]ee awards against enforcement officials are run-of-the-mill occurrences." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 739 (1980).

The Sixth Circuit, in a pair of cases, conclusively rejected the argument that the closeness of a case could be a special circumstance allowing denial of fees. The purpose of Section 1988 was not to penalize defendants but to encourage plaintiffs to bring meritorious civil rights suits. *Cleveland v. Ibrahim*, 121 F. App'x 88, 91 (6th Cir. 2005) (unpublished opinion) (citing N.*Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63 (1980), and *Hensley*, 461 U.S. at 444 (Brennan, J., concurring in part)). "If we were to hold that the closeness or difficulty of a case is a special circumstance that could defeat an attorney's fee award altogether, then the fee-shifting provision would not work as intended. Indeed, it is often the factually close or legally difficult cases with which a potential plaintiff would need the most assistance and could benefit the most from the aid of an attorney." *Id.*; *see also Keene v. Zelman,* 337 F. App'x 553, 557 (6th Cir. 2009) (unpublished) (explaining *Cleveland*).

Likewise, this Court in both *Lefemine II* and *Bills* explained that the good faith of defendant is not a special circumstance for denying a plaintiff fees. 758 F.3d at 557; 628 F.2d at 847. That the defendant's counsel did a good job (in the District Court's view) in a losing effort should be treated the same. Indeed, the Court should expect Section 1988 defendants—particularly when the defendant is a government entity.

Professionalism by government lawyers (or their paid outside counsel) should be the norm, not the exception. And the good faith and professionalism of the plaintiff is likewise not a ground for denying fees. So this reason for denying fees by the District Court, too, cannot qualify as a special circumstance for denying a fee award.

## II. The District Court's failure to apply the right test was an abuse of discretion.

In *Lefemine I*, the Supreme Court explained that a denial of fees must be reversed when a district court failed to "address[] whether any special circumstances exist" sufficient to allow the denial of fees. 568 U.S. at 5. Similarly, in *McDonnell*, this Court explained that "[i]f the district court misunderstood the nature and extent of its ability to determine a reasonable amount of attorneys' fees," then "the resulting fee award is the product of legal error and thus constitutes an abuse of discretion."

31

134 F.3d at 641. Even when it is merely "not entirely clear" whether the court applied the correct test, then remand is warranted. *Id.*

Here, the District Court asserted that the test for whether fees were appropriate was a discretionary one. Dkt. 140 at 2. The District Court relied on *Cherry v. Champion International Corp.*, 186 F.3d 442, 446 (4th Cir. 1999), for this proposition.

But *Cherry* was a case about costs. The *Cherry* case interpreted Rule 54(d)(1), titled "Costs Other than Attorneys' Fees." But although, a prevailing party is "ordinarily" entitled to costs, the *Cherry* test is different, giving more discretion to the District Court, than the narrower "exceptional circumstances" test under Section 1988. *See also Cleveland*, 121 F. App'x at 91 (explaining that the closeness of a case is not grounds for denying Section 1988 fees the way it would be under Rule 54(d)(1) as the two provisions have different tests).

Under the discretionary standard of *Cherry*, no special circumstances needs to be find, and a court is free to consider a wide range of normal circumstances such as the losing party's good faith, general concepts of public interest and equity, the economic consequences of an award, the value of one party's victory, and the closeness of the case. *Id.*;

*Constantino v. American S/T Achilles*, 580 F.2d 121, 123 (4th Cir.1978). But the "exceptional circumstances" test requires more in order to denying fees. As Section I broadly highlights, it requires the Court to affirmatively find that one of a very narrow category of "special circumstances" exists to make the case an exceptional one where fees are to be denied.

By applying *Cherry*, the District Court applied the wrong test. As a result, the Court should remand this case back to the District Court for this reason alone. *Lefemine II*, 758 F.3d at 554 (because "'neither of the courts below addressed whether any special circumstances existed in this case making a fee award unjust, the Supreme Court remanded to us, and we, in turn, remanded to the district court to award fees unless the court determined by express findings that special circumstances rendered such an award unjust") (citations omitted and cleaned up).

## CONCLUSION

The Court should reverse the decision of the District Court and remand to the District Court with instructions to perform a lodestar analysis to determine the appropriate amount of attorneys' fees to award Omeish. In the alternative, the Court should vacate the decision of the

District Court and remand with instructions to determine whether a fee award should be issued under *Lefemine* and *Brandon*.

## RULE 34(a) STATEMENT

For the reasons stated in the brief, Appellant requests oral argument.

Respectfully submitted,

Date: November 16, 2022

/s/ Lena F. Masri
Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Plaintiff-Appellant*

*\*Gadeir I. Abbas licensed to practice in Virginia only. Practice limited to federal matters.*

34

## CERTIFICATE OF COMPLIANCE

This document complies with type-volume limits of Fed. R. App. R. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 6,749 words.

This complies with the typeface and type style requirements because this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Lena F. Masri
Lena F. Masri

35